J-S38031-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| B.K.M., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| J.A.M., | : | |
| | : | |
| Appellant | : | No. 583 EDA 2014 |

Appeal from the Order Entered January 23, 2014,
In the Court of Common Pleas of Montgomery County,
Civil Division, at No. 2010-31332.

BEFORE:  FORD ELLIOTT, P.J.E., BOWES and SHOGAN, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED OCTOBER 10, 2014**

J.A.M. ("Mother") appeals from the order entered on January 23, 2014,
following a remand from this Court *via* a memorandum and order filed by a
previous panel of this Court on December 11, 2013.[1]  The trial court order
currently on appeal awarded the parties, B.K.M ("Father") and Mother,
shared legal custody of their children, A.M., born in December of 2003, L.M.,
born in March of 2005, and J.M., born in March of 2008 (collectively "the
Children").  The order also awarded primary physical custody during the
school year to Father, who resides in Montgomery County, Pennsylvania, and

---

[1] This is the third time that the parties have been before this Court on
appeal in this custody matter.

partial physical custody to Mother, who resides in Sweden.[2]  In addition, during the pendency of this appeal, Mother filed with this Court a petition to stay the trial court order dated May 21, 2014, and vacate the trial court order dated June 11, 2014, both of which pertain to Mother's alimony *pendente lite*.  After careful review of the tortured history of this case, for the reasons that follow, we affirm the trial court's January 23, 2014 order, and deny Mother's petition to stay and vacate.

As indicated, this custody matter has been before this Court on two prior occasions.[3]  Because the factual background and procedural history has been set forth in the two panel decisions of this Court and the parties are aware of that history, we will not repeat it in depth here.[4, 5]  Thus, we adopt

---

[2] Under the order instantly on appeal, Mother is to exercise custody in Sweden in the summer and in the United States as often as she elects to travel here.

[3] As the first hearings in this matter were held on October 27, 2011, and October 28, 2011, the Child Custody Act (the "Act"), 23 Pa.C.S. §§ 5321-5340, is applicable.  *C.R.F. v. S.E.F.*, 45 A.3d 441, 445 (Pa. Super. 2012) (holding that, if the custody evidentiary proceeding commences on or after the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act apply).  *B.K.M. v. J.A.M.*, 50 A.3d 168, 171 (Pa. Super. 2012).

[4] The first Superior Court decision was an opinion filed on July 31, 2012, with regard to an appeal from a trial court order dated January 4, 2012, and entered on January 5, 2012.  *B.K.M. v. J.A.M.*, 50 A.3d 168, 170-171 (Pa. Super. 2012).  The trial court's January 5, 2012 order granted the parties shared legal custody and shared physical custody in the event Mother would return to Montgomery County, Pennsylvania.  Alternatively, primary physical custody was granted to Father in the event Mother would elect to remain in residence in Sweden.

the factual background and procedural history set forth in the prior Superior Court opinion and memorandum herein.

However, we are compelled to set forth the following additional procedural history at this juncture. In the opinion entered on July 31, 2012, this Court agreed with Mother that the trial court had erroneously interpreted 23 Pa.C.S. § 5337(l) regarding the presumption to be accorded when a parent relocates prior to a full expedited hearing.[6] We remanded the

---

[5] The second Superior Court decision was a memorandum filed on December 11, 2013, with regard to an appeal from a trial court order dated March 20, 2013, and entered on March 22, 2013, amending an order entered on March 8, 2013. **B.K.M. v. J.A.M.**, 1025 EDA 2013, 1162 EDA 2013, 93 A.3d 507 (Pa. Super. filed December 11, 2013) (unpublished memorandum). The trial court's March 20, 2013 order had awarded Mother and Father shared legal custody, shared physical custody in the event Mother would elect to return and reside in Montgomery County, Pennsylvania, and, alternatively, awarded Father primary physical custody in the event Mother would elect to remain in residence in Sweden.

[6] While the appeal from the first custody order was pending before this Court, the trial court issued an order on March 5, 2012, finding Mother in contempt of its prior order, granting Father sole legal and physical custody of the Children, and ordering Mother to return the Children to the United States and surrender their passports. Additionally, in the March 5, 2012 order, the trial court vacated the existing child support order and required Father to deposit all alimony *pendente lite* into an escrow account. On March 6, 2012, the trial court entered another order memorializing, under the Domestic Relations caption, the provisions of the March 5, 2012 order regarding child support and alimony *pendente lite*. On June 29, 2012, the trial court entered an order terminating Father's obligation to deposit alimony *pendente lite* into escrow. During that time, Father instituted an action in Sweden, under the Hague Convention, for the return of the Children. On September 27, 2012, the Hague Convention proceedings concluded, resulting in an order by the Swedish courts requiring Mother to return the Children to the United States within thirty days.

case with instructions to the trial court to "fully consider the best interests of the Children pursuant to sections 5328(a) and 5337(h), which shall include a weighing of the evidence of the Children's lives in Sweden, and the need for stability and continuity established by the Children's education, family life and community life in Sweden."[7]

On October 4, 2012, Mother filed a motion *in limine*, seeking either to have the matter decided based upon a review of the record as developed at the first custody hearings or to limit any further testimony on remand to the scope of the Children's lives in Sweden.

In our prior memorandum decision, this Court explained the following:

> On October 26, 2012, prior to any proceedings on remand, the trial court entered an interim custody order requiring Mother to return the Children to the United States and surrender their passports, setting a custody schedule, and permitting Father to enroll the Children in school in Montgomery County, Pennsylvania. On October 28, 2012, Mother brought the Children to Montgomery County, and returned to Sweden approximately two weeks later.

**B.K.M. v. J.A.M.**, 1025 EDA 2013, 1162 EDA 2013, 93 A.3d 507 (Pa. Super. filed December 11, 2013) (unpublished memorandum at 7).

---

[7] After this Court issued its published decision on July 31, 2012, and relinquished jurisdiction, Mother also filed with this Court a motion to stay, which we granted in a *per curiam* order entered on September 5, 2012. Specifically, we granted a stay of the trial court's March 5, 2012, March 6, 2012, and June 29, 2012 orders, "pending any further appeals and the conclusion of any proceedings held pursuant to this Court's July 31, 2012 decision that vacated the trial court's January 4, 2012 decision."

On December 19, 2012, the trial court entered an order denying Mother's motion *in limine*. On that same date, the trial court conducted an evidentiary hearing pursuant to the remand by this Court, at which Mother, Mother's father, and Father testified. The trial court continued the hearing and Father completed his testimony on January 29, 2013. Also, Mother offered the video depositions of two witnesses in Sweden, one of whom was her doctor and one of whom was a teacher of the Children. The trial court sustained Father's objections to the admission of the video depositions on the basis that Mother had not provided sufficient notice of the video depositions to Father's counsel.

On March 8, 2013, the trial court issued a custody order that was substantially similar to the January 5, 2012 custody order. *B.K.M.*, 1025 EDA 2013, 1162 EDA 2013, 93 A.3d 507 (unpublished memorandum at 8). The distinguishing difference between the two orders was that the March 8, 2013 order required Mother, thirty days prior to each occasion when the Children travel to Sweden, to post a $100,000.00 bond naming Father as the beneficiary or payee in the event that Mother failed to return the Children to the United States. *Id*. The trial court's March 20, 2013 order, amending its March 8, 2013 custody order, increased the amount of the bond to $500,000.00. *Id*.

In her second appeal to this Court, from the trial court's March 8, 2013 order, as amended by the March 20, 2013 order, Mother raised the following six issues:

I. Did the Trial Court err by entering a second Interim Custody Order on October 26, 2012 (a) despite the Superior Court Order of September 5, 2012 which had stayed the lower court's first Interim Order (first order entered March 5, 2012) pending the conclusion of all appeals; (b) despite the Superior Court Order of July 31, 2012 vacating the Custody Order of January 4, 2012; and (c) despite having had no hearing on the matter, all resulting in significant prejudice to Mother and in contravention of the best interests of the children[?]

II. Did the Trial Court err by entering an Order dated December 19, 2012 improperly denying Mother's Motion in Limine filed October 4, 2012 in which Mother sought to limit the additional testimony (if any) to those issues identified in the Superior Court's Order of July 31, 2012 and which facts were already contained in the record and since the Superior Court's remand was based upon an error of law and did not specify the need for additional testimony, and, instead allowing for any and all testimony of events and issues arising up to the date of trial in December of 2012 and January of 2013, resulting in prejudice to Mother[?]

III. Did the Trial Court err by entering an Order dated January 29, 2013 improperly precluding the testimony of Dr. Jonas Bengtsson and Marianne Andreasson, resulting in prejudice to Mother, despite the Court's instruction to conduct said testimony by advance video deposition and thereby rendering the Rules of Civil Procedure inapplicable and, in any event, ignoring that no advance notification of witnesses was required by this Court[?]

IV. Did the Trial Court err by determining that the best interests of the children warrant Mother having primary physical custody of the children if, and only if, Mother resides in the United States, and [sic] which grants to Father primary physical custody of the children in the United States if Mother does not return to the United States[?]

-6-

> V. Did the Trial Court err by again (and despite Superior Court directive by Order dated July 31, 2012) failing to properly interpret section 5337(l)[,] resulting again in a failure to properly consider and weigh all factors of sections 5328(a) and 5337(h) and thereafter failing to conclude that the best interests of the children warrant their continued residence in Sweden?
>
> VI. Did the Trial Court err by abusing its discretion in entering its March 2013 Order and requiring a $500,000 bond when no request for said bond was made at trial and no evidence was placed in the record regarding the ability of Mother, a Swedish citizen with no assets in the United States, to secure said bond, and the evidence regarding Mother's financial condition is uncontested, all resulting in an Order which creates impossibility of performance and is otherwise confiscatory and punitive in nature[?]

**B.K.M.**, 1025 EDA 2013, 1162 EDA 2013, 93 A.3d 507 (unpublished memorandum at 9-10) (quoting Mother's Brief at 9-10).[8]

In reviewing the appeal from the March 20, 2013 order, the panel of this Court focused on Mother's fifth issue, finding it to be dispositive. The panel reviewed the trial court's analysis of the section 5328(a) best interest factors and the section 5337(h) relocation factors. This Court concluded that the trial court's March 20, 2012 custody order involved "'sanctioning the parent,' specifically Mother for her conduct vis-à-vis Father." **B.K.M.**, 1025 EDA 2013, 1162 EDA 2013, 93 A.3d 507 (unpublished memorandum at 7). The panel stated that:

---

[8] Father also filed with this Court a cross-appeal from the trial court's March 8, 2012 order, as amended by the March 20, 2012 order.

by focusing solely on this behavior by Mother, the trial court essentially made its custody and relocation determinations based on a single factor, namely which party is more likely to encourage and permit frequent and continuing contact between the child and the other parent. 23 Pa.C.S.A. § 5328(a)(1); 23 Pa.C.S.A. § 5337(h)(5). Other factors under sections 5328(a) and 5337(h) received little or no consideration by comparison.

*Id*. at 19.

Further, the panel directed the trial court, on remand, to consider the video depositions of Mother's doctor, Dr. Jonas Bengtsson, and the Children's teacher in Sweden, Marianne Andreasson, taken on December 17, 2012. In so doing, the panel concluded that the trial court erred in refusing to grant Mother's request to admit the video depositions into evidence at the hearing based on the inadequacy of the notice. *Id*. at 21-23. The panel reasoned that the trial court erred in precluding the video testimony of these individuals because neither party had filed a pretrial statement prior to the December 19, 2012 hearing. *Id*. at 23 n.4. Further, the panel found that the exclusion of the evidence was prejudicial to Mother, as it provided direct evidence of the Children's lives in Sweden with regard to 23 Pa.C.S. §§ 5328(a) and 5337(h). *Id*. at 23-24.

Moreover, regarding Mother's sixth issue, the panel directed the trial court to determine Mother's financial ability to post a bond before including such a requirement in a new custody order on remand. *Id*. at 24-25. The panel instructed that, on remand, after making the appropriate factual

-8-

determinations, if the trial court again determined that a monetary bond was necessary to secure Mother's compliance with its orders, it could impose such a requirement only in an amount it determined Mother had the present ability to pay. *Id*. at 25. Additionally, the panel stated that, based upon its decision to remand, it need not address the first two issues in Mother's appeal, both of which implicated the scope of the proceedings conducted by the trial court after the July 31, 2012 remand order of this Court. *Id*. at 21, n.2.

In summary, on December 11, 2013, the panel of this Court vacated the trial court's order entered on March 8, 2013, as amended on March 20, 2013, remanded the case for further proceedings consistent with the memorandum, and relinquished jurisdiction. The panel directed the trial court, on remand, to conduct an evidentiary hearing, or otherwise receive evidence, regarding the limited issue of Mother's financial ability to post a bond in the amount of $500,000.00, or some other lesser amount. The panel also directed the trial court, within sixty days of the date of this Court's decision, to enter a new order and a revised written opinion that (1) weighed the evidence of the Children's lives in Sweden and considered their need for stability and continuity in their education, family life, and community life in Sweden, and (2) considered all of the factors in 23 Pa.C.S.

§§ 5328(a) and 5337(h), and set forth its reasons, including relevant evidence, and conclusions with respect to the factors.[9]

On January 16, 2014, the trial court held a hearing on Mother's financial ability to post a bond in the amount of $500,000.00. At the hearing, Mother presented the testimony of Thomas Carl, who, together with his wife, owns Debbie Carl Bail Bonds in Norristown, Pennsylvania. N.T., 1/16/14, at 4-5. Mother testified on her own behalf, *via* telephone, from Sweden. The trial court also admitted Mother's exhibits regarding her finances.

On January 23, 2014, the trial court entered an order that awarded primary physical custody to Father in Montgomery County, Pennsylvania, and partial physical custody to Mother in Sweden. The trial court stated that Father was more likely to encourage continuing contact between the Children and Mother, and he was more likely to attend to the Children's emotional needs. Trial Court Opinion, 1/23/14, at 23. Further, the trial court concluded that Mother intended to remain in Sweden, and it directed that if Mother were to move to the United States, a petition to modify could be filed so that the trial court could hold a hearing to determine whether the custody order should be changed. *Id*. Moreover, at paragraph thirteen, the trial court directed the following:

---

[9] We do not discuss, herein, the panel's disposition of Father's cross-appeal, as it is not relevant to Mother's issues currently on appeal.

(13) In the event the custodial party fails to return the [C]hildren to the other parent at the end of his/her custodial period, the non-violating party may file a rule to show cause why the Custody Order should not be amended to award sole physical and legal custody to the non-violating parent.

Trial Court Order, 1/23/14, at ¶ 13. There was no bond requirement in the trial court's order.

On February 21, 2014, Mother filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court completed a Pa.R.A.P. 1925(a) opinion on March 11, 2014.

On appeal, Mother now raises the following issues for our review:

I. Did the Trial Court err by entering a second Interim Custody Order on October 26, 2012 (a) despite the Superior Court Order of September 5, 2012 which had stayed the lower court's first Interim Order (first order entered March 5, 2012) pending the conclusion of all appeals; (b) despite the Superior Court Order of July 31, 2012 vacating the Custody Order of January 4, 2012; and (c) despite having had no hearing on the matter, all resulting in significant prejudice to Mother and in contravention of the best interests of the children[?]

II. Did the Trial Court err by entering an Order dated December 19, 2012 improperly denying Mother's Motion in Limine filed October 4, 2012 in which Mother sought to limit the additional testimony (if any) to those issues identified in the Superior Court's Order of July 31, 2012 and which facts were already contained in the record and since the Superior Court's remand was based upon an error of law and did not specify the need for additional testimony, and, instead allowing for any and all testimony of events and issues arising up to the date of trial in December of 2012 and January of 2013, resulting in prejudice to Mother[?]

-11-

III. Did the Trial Court err by abusing its discretion as to the manner in which it weighed and analyzed factors 1, 2, 3, 5, 7 and 8 set forth in 23 Pa.C.S.A. § 5328(a) and factors 1, 3, 4, 5, 8, 9, 10 and 13 of 23 Pa.C.S.A. § 5337(h) and thereafter failing to conclude that the best interests of the children warrant their continued residence in Sweden, specifically[?]

IV. Did the Trial Court err by inserting in the Custody Order of January 23, 2014 contempt remedies (specifically noted in paragraph 13 of the Order) which are inconsistent with Pennsylvania Law[?][1]

> [1] [Mother's Pa.R.A.P.] 1925(b) statement identified that the paragraphs 12 and 13 of the January 23, 2014 custody order contained contempt remedies inconsistent with Pennsylvania law. [Mother] amends that representation and sets forth that only paragraph 13 of the January 23, 2014 order contains a remedy unavailable in contempt proceedings under Pennsylvania law.

Mother's Brief at 8-9 (footnote in original).

In custody cases, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

We have stated the following:

> The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting

*Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

In *M.A.T. v. G.S.T.*, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we

stated the following regarding an abuse of discretion standard:

> Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*Id*. at 18-19 (quotation and citations omitted).

With any custody case decided under the Act, the paramount concern is the best interests of the child. 23 Pa.C.S. §§ 5328, 5338. Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S. § 5338. The best interest factors that the trial court must consider are set forth at 23 Pa.C.S. § 5328(a). *E.D. v. M.P.*, 33 A.3d 73, 80-81 n.2 (Pa. Super. 2011).

Mother's issues one and two are identical to the first two issues she raised in her prior appeal from the trial court's March 8, 2013 order, as amended on March 20, 2013. First, Mother argues that the trial court improperly entered the October 26, 2012 interim order. Second, Mother challenges, as improper, the trial court's December 19, 2012 order denying her motion *in limine* and convening further evidentiary hearings on December 19, 2012, and January 29, 2013.

Because Mother's first two issues were previously before a panel of this Court for disposition, we conclude that a discussion of the proper application of the coordinate jurisdiction rule and the law of the case doctrine is appropriate to our analysis in this appeal.

> [T]his Court has long recognized that judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions. ***See, e.g., Okkerse v. Howe***, 521 Pa. 509, 516-517, 556 A.2d 827, 831 (1989). This rule, known as the "coordinate jurisdiction rule," is a rule of sound jurisprudence based on a policy of fostering the finality of pre-trial applications in an effort to maintain judicial economy and efficiency. ***Id. See also Golden v. Dion & Rosenau***, 600 A.2d 568, 570 (1991) (once a matter has been decided by a trial judge the decision should remain undisturbed, unless the order is appealable and an appeal therefrom is successfully prosecuted).
>
> In our view, this coordinate jurisdiction rule falls squarely within the ambit of a generalized expression of the "law of the case" doctrine. This doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter. ***See*** 21 CJS Courts § 149a; 5 Am.Jur.2d Appeal and Error § 744. Among the separate but

-14-

distinct rules that make up the law of the case doctrine are that: (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court. *See* Joan Steinman, *Law of the Case: A Puzzle in Consolidated and Transferred Cases and in Multidistrict Litigation*, 135 U.Pa.L.Rev. 595, 602 (1987) (*citing* A. Vestal, *Law of the Case: Single-Suit Preclusion*, 12 Utah L.Rev. 1, 1-4 (1967) (hereinafter "*Judicial Puzzle*").

The various rules which make up the law of the case doctrine serve not only to promote the goal of judicial economy (as does the coordinate jurisdiction rule) but also operate (1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end. 21 C.J.S. Courts § 149a; *Judicial Puzzle* at 604-605.

***Commonwealth v. Starr***, 664 A.2d 1326, 1331 (Pa. 1995).

In her brief, Mother concedes that she raised and argued the trial court's alleged error in issuing the October 26, 2012, and December 19, 2012 orders in her second appeal before this Court. Mother's Brief at 22 n.5. In essence, Mother contends that this Court did not adequately address her first two issues in our December 11, 2013 memorandum decision. Notably, Mother did not challenge this Court's December 11, 2013 memorandum decision. However, we disagree that the panel's memorandum did not consider Mother's first two issues. In our prior

memorandum decision, the panel of this Court vacated the March 8, 2013 custody order, as amended March 20, 2013, and remanded with direction for a full examination by the trial court and determination of the best interest and relocation factors, relinquishing jurisdiction of this Court. After rendering our decision, this Court stated the following:

> Based upon our decision to remand the case for further proceedings, we will not address the first two issues raised on appeal by Mother, both of which implicate the scope of the proceedings conducted by the trial court after our prior remand – including its decision to enter an interim custody order that was contrary to our instructions in our order dated September 5, 2012, and to conduct another evidentiary hearing.
>
> We must indicate our displeasure, however, with the trial court's rationale in taking these actions. . . .

*B.K.M.*, 1025 EDA 2013, 1162 EDA 2013, 93 A.3d 507 (unpublished memorandum at 21 n.2). Thus, when presented with the opportunity, the panel did not overtly disturb the October 26, 2012 interim order or the December 19, 2012 order denying Mother's motion *in limine*. However, the Court essentially considered the issues to be moot in light of the panel's decision to remand and the direction offered to the trial court. Notably, Mother failed to seek clarification or reconsideration from the panel of this Court as to either of the trial court's orders in view of the decision to vacate and remand the matter. Mother is now raising the same two issues before a separate panel for resolution in this appeal. Consequently, the coordinate

-16-

jurisdiction rule and the law of the case doctrine bar us from reviewing these issues.

In her third issue, Mother argues that the trial court abused its discretion in weighing and analyzing the statutory factors upon remand. Specifically, Mother challenges the trial court's weighing of the evidence with regard to the factors under 23 Pa.C.S. § 5328(a), in particular, (a)(1), (2), (3), (5), (7), and (8), and 23 Pa.C.S. § 5337(h), in particular, (h)(1), (3), (4), (5), (8), (9), (10) and (13). Mother asserts that the trial court abused its discretion in failing to conclude that the best interests of the Children warrant their continued residence in Sweden. Mother contends that the trial court's January 23, 2014 opinion and order afforded only a cursory review of the factors in sections 5328(a) and 5337(h), and under-weighed certain evidence, as was the situation which prompted this Court to vacate the prior custody order in our December 11, 2013 memorandum decision. Mother's Brief at 37.

Mother alleges that the trial court failed to accord sufficient weight to evidence regarding her faithful performance of all parental duties in Sweden, the Children's need to maintain stability by remaining in the schools where they had been attending and thriving in Sweden, and the importance of maintaining the strong relationships with friends and family in Sweden. *Id*. Mother argues that the trial court's failure to consider all relevant evidence

when weighing the custody and relocation factors demonstrates a consistent bias against her and constitutes an abuse of discretion. Mother complains that, in the January 23, 2014 custody order, the trial court awarded her less custody time than the January 4, 2012, and March 8/20, 2012 custody orders, in that she is no longer awarded 55% of annual custodial time if she remains in the United States. *Id*. at 36.

In support of her contention, Mother relies on two prior Superior Court decisions, ***C.M.K. v. K.E.M.***, 45 A.3d 417 (Pa. Super. 2012), and ***S.J.S. v. M.J.S.***, 76 A.3d 541 (Pa. Super. 2013), arguing that they should be considered on a "reverse application" basis. Mother's Brief at 38, 47, 54. In ***C.M.K.*** and ***S.J.S.***, this Court concluded that the children would benefit from staying in their original residences. In her unique theory, Mother asks us to conclude the opposite here and that the Children would benefit from the move to Sweden instead of staying in their original residence in Pennsylvania.

We have reviewed and considered ***C.M.K.*** and ***S.J.S.***, and we find that they are not persuasive with regard to the matter before us. In ***C.M.K.***, a mother filed an appeal from an order denying her petition for relocation and to modify the custody of her son by the parties' custody agreement. The mother sought to relocate the child from his current residence in Grove City, Pennsylvania, a distance of sixty-eight miles, to Albion, Pennsylvania, where

the mother had lived prior to her relationship with the child's father and where the mother's extended family resided. The panel ruled that the trial court properly found that the proposed move would significantly impair the father's ability to exercise his custodial rights. Significantly, the panel reached its decision based on a weighing of the facts when applied against the appropriate relocation factors. In particular, the panel noted that the evidence showed that the child and the father had a strong support system in Grove City through his paternal grandparents, but did not have an equally strong support system from the mother's family in Albion, and the child would have to adjust to the Albion area. The panel also stated that the trial court found that the evidence supported a finding that the advantages of the proposed move were minor, and there was no evidence that the child would benefit from the move. The panel ruled that the trial court did not err in finding that the mother failed to meet her burden of proving that relocation to Albion with the child, together with a related modification of the parties' custody arrangement, would be in the child's best interest.

In *S.J.S.*, a mother appealed from an order that denied her petition for relocation with her two minor daughters and directed that the mother would retain primary custody if she chose to remain in Erie County. If she chose to relocate from Erie County to Buckingham, in Bucks County, a distance of seven and one-half hours by automobile, the father would be awarded

primary custody. The father, his family, and the mother's family resided in Erie. There was no existing custody order in place. The panel of this Court agreed with the trial court that there was little in the record to favor relocation. The panel stated that the children were doing well in school and their activities, and they had a strong bond with their father and their extended families in Erie. At the same time, the mother's employment prospects in Buckingham were not established, and the mother's motives for moving did not appear to be driven by her children's best interests. Accordingly, the panel found no abuse of discretion on the part of the trial court.

Mother has not persuaded us that the decisions in **C.M.K.** and **S.J.S.** warrant her relief. Thus, we decline Mother's invitation to apply those cases in a reverse mode to the instant case.

Moreover, to the extent Mother argues that the trial court abused its discretion in weighing and analyzing the appropriate factors in this case, we conclude that her claim lacks merit. Indeed, "[w]hen a custody dispute involves a request by a party to relocate, we have explained 'there is no black letter formula that easily resolves relocation disputes; rather, custody disputes are delicate issues that must be handled on a case-by-case basis.'" **C.M.K.**, 45 A.3d at 421 (quoting **Baldwin v. Baldwin**, 710 A.2d 610, 614 (Pa. Super. 1998)).

Section 5328(a) of the Act provides as follows:

**§ 5328.  Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328.[10]

Ordinarily, where a request for relocation of the subject child is involved, the trial court must consider the following ten relocation factors set forth within section 5337(h) of the Act:

---

[10] Effective January 1, 2014, the statute was amended to include an additional factor at 23 Pa.C.S. § 5328(a)(2.1) providing for consideration of child abuse and involvement with child protective services, but Mother does not assail the trial court's failure to consider this subsection in its January 23, 2014 order on remand.

**(h) Relocation factors.—**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

    (10) Any other factor affecting the best interest of the
    child.

23 Pa.C.S. § 5337(h); *see also E.D.*, 33 A.3d at 81-82 (stating that "Section 5337(h) mandates that the trial court *shall* consider all of the factors listed therein, giving weighted consideration to those factors affecting the safety of the child.") *Id*. at 81.

Upon careful review of Mother's challenges to the trial court's consideration of the relevant factors, the certified record before us, the findings of fact dated January 23, 2014, and the opinion of the trial court dated March 11, 2014, we conclude the trial court's determinations are supported by competent evidence in the certified record. Indeed, the trial court's discussions and conclusions as to each of the statutory factors to be considered are reasonable. Thus, we do not discern any error of law or determine that the conclusions are unreasonable in light of the sustainable findings of the trial court. *C.R.F.*, 45 A.3d at 443. Accordingly, Mother's contrary argument lacks merit.

In her fourth issue, Mother argues that the trial court erred by including in the January 23, 2014 custody order a provision at paragraph 13 that Mother claims is an improper contempt remedy and is inconsistent with Pennsylvania law. Mother contends that the provision in paragraph 13, which permits a "non-violating" party to file a rule to show cause why the custody order should not be amended to award sole physical and legal

custody to the non-violating parent, is inconsistent with the Superior Court's clear holdings on this issue. Mother claims that, pursuant to the holdings in *G.A. v. D.L.*, 72 A.3d 264 (Pa. Super. 2013), *Langendorfer v. Spearman*, 797 A.2d 303 (Pa. Super. 2002), and *P.H.D. v. R.R.D.*, 56 A.3d 702 (Pa. Super. 2012), either parent who believes that the other has violated the custody order must file a petition for contempt. She asserts that the trial court may not enter an order modifying the custody order as a sanction for a finding of contempt or in relation to the petition for contempt, but may modify the custody order only if either parent has filed a petition to modify custody.

We conclude the cases Mother cites are distinguishable from the instant matter in that in each custody case, one of the parties had filed a contempt petition against the other. Here, Mother's issue is premature because neither party has sought to follow the rule to show cause procedure set forth by the trial court in paragraph 13 of the custody order.

The trial court explained that it included this paragraph in the custody order:

> as a way for the parties to appear before the court on an expedited basis, in the event of a contempt, due to the length of time it usually takes petitions to proceed from filing to appearance before a judge. In no way did the inclusion of this paragraph mean that custody would be modified, in any way, without a consideration of the custody factors. However, in the event that the Superior Court does not find that this portion of the Order complies with allowable contempt remedies, we

> respectfully request that the case be remanded so that the undersigned can vacate this particular paragraph of the order.

Trial Court Opinion, 3/11/14, at 12.

In the appeal before us, neither party has attempted to enforce paragraph 13 against the other party, nor has the trial court utilized the rule to show cause procedure set forth therein in this matter. Accordingly, it is speculative for us to address the issue and rule that Mother has suffered a deprivation of her due process guarantee based on the inclusion of paragraph 13 in the custody order. Thus, we will not disturb paragraph 13, and we conclude that Mother's issue fails.

In addition, while this appeal was pending, on July 8, 2014, Mother filed with this Court a "Petition to Stay Order dated May 21, 2014, and Vacate Order dated June 11, 2014 Pursuant to Superior Court Order dated September 5, 2012 in Case 233 EDA 2012 and Pursuant to Pa.R.A.P. 1732(B)." In her stay petition, Mother alleges that the trial court's May 21, 2014 order was a *per curiam* order which reduced the amount of her alimony *pendente lite* from Father. She asserts that the June 11, 2014 trial court order denied Mother's emergency petition to stay modification of support, seeking to stay the May 21, 2014 order. She argues that this Court's September 5, 2012 stay order is controlling, and that the matter is an "ongoing appeal [which] is a continuation of the two prior custody appeals in this matter, both of which resulted in this court vacating the Trial

Court's underlying custody orders." Petition to Stay at ¶¶ 38-42. Thus, Mother urges that the trial court should not have acted to reduce her alimony *pendente lite* in light of the September 5, 2012 stay order of this Court and while this Court had jurisdiction over the present appeal. Additionally, Mother contends that she faces irreparable harm from the reduction of her alimony *pendent lite*. Mother states that the trial court scheduled a trial on the alimony *pendente lite* matter to occur on October 14, 2014.

Pennsylvania Rule of Appellate Procedure 1732(b) provides as follows:

**(b) Contents of application for stay.** An application for stay of an order of a lower court pending appeal, or for approval of or modification of the terms of any supersedeas, or for an order suspending, modifying, restoring or granting an injunction during the pendency of an appeal, or for relief in the nature or peremptory mandamus, may be made to the appellate court or to a judge thereof, but the application shall show that application to the lower court for the relief sought is not practicable, or that the lower court has denied an application, or has failed to afford the relief which the applicant requested, with the reasons given by the lower court for its action. The application shall also show the reasons for the relief requested and the facts relied upon, and if the facts are subject to dispute the application shall be supported by sworn or verified statements or copies thereof. With the application shall be filed such parts of the record as are relevant. Where practicable, the application should be accompanied by the briefs, if any used in the lower court.

Pa.R.A.P. 1732(b).

Herein, we decline to address the September 5, 2012 stay order issued by this Court in relation to Mother's previous appeal from the January 4,

2012 order, under the law of the case and the coordinate jurisdiction rule. *Starr*, 664 A.2d at 1331. However, we disagree with Mother's contention that the present appeal is part of a continuous, ongoing appeal such that this Court's September 5, 2012 order would be controlling of the trial court's jurisdiction to enter the orders in question. Accordingly, we deny Mother's petition.

Order affirmed. Petition denied. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/10/2014